UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICHOLAS DARDENO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 07-78-P-S |
| ) | |
| YORK COUNTY JAIL, et al., ) | |
| ) | |
| Defendants. ) | |

*Recommended Decision on Cross-Motions for Summary Judgment (Docket Nos. 10 & 14),
Order Granting Motion to Supplement (Docket No. 16),
and Order Seeking Clarification from Plaintiff*

Nicholas Dardeno initiated this action in state court by filing a "motion to be heard." In that motion he claimed that the York County Jail Sheriff and employees were refusing to give him access to legal research he desired in order to inform him about and prepare him for his ongoing criminal case. The defendants removed the action to this court. Thereafter, I entered an order that set a deadline for dispositive motions and directed that no further discovery should be pursued until a ruling thereon. Dardeno has filed a motion for summary judgment (Docket No. 10) and the defendants have responded with a pleading that is both an objection to that motion and a cross-motion for summary judgment (Docket No. 14). On August 23, 2007, Dardeno also filed a motion to supplement the summary judgment record (Docket No. 16) which I now grant. I recommend that the Court grant the defendants judgment on the denial of access to court claim and deny Dardeno's motion for summary judgment. However, that is not the end of the matter. The pleadings that Dardeno filed with the state court and a substantial part of his arguments in this court are that the defendants have not complied with state law and the Department of Corrections regulations that provide for inmate access to these legal materials. It may be that the

defendants removed this action to the federal court even though Dardeno never intended to plead a federal question.  That said, Dardeno does refer to the infringement of his civil liberties and there is a potential of another constitutional claim at stake here, a First Amendment claim that Dardeno has been denied access to certain library materials for no legitimate penalogical reason. Because of this ambiguity, I am giving Dardeno the opportunity to inform the court how he wishes to advance this action, as explained below.

## *Discussion*

### *Standard for Cross-Motions for Summary Judgment*

Summary judgment is granted to a party only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [that party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.  As there is a single issue here that is the subject of the cross-motions for summary judgment, I must draw all reasonable inferences against granting summary judgment to determine whether there are genuine issues of material fact to be tried. Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 429 (1st Cir. 1992).  If there is a genuine issue of material fact, both motions fail, and, if not, one party is entitled to judgment as a matter of law.  10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ.3d § 2720.

*Factual Record*

Dardeno has set forth his factual assertions in an affidavit with numbered paragraphs. The defendants have responded, answering these paragraphs and setting forth statements of additional facts. Dardeno has not responded to the additional facts.

Dardeno is presently incarcerated at the York County Jail (YCJ). (SAMF ¶ 1.) Inmates at YCJ are not allowed to go to the library; they need to put in a request form and the library officer will bring the requested material when he has time. (SMF ¶ 1; Resp. SMF ¶ 1.) The YCJ library officer is Officer Pepin and Pepin also holds multiple other jobs within the jail. (SMF ¶ 2; Resp. SMF ¶ 2.) According to Dardeno, Officer Pepin has stated to Dardeno that his boss, Captain Daniels told him that any inmate that requested legal library materials of a criminal or non-criminal nature should be denied access to the materials if there was an attorney working on the case. (SMF ¶¶ 3, 19.) The defendants admit that Pepin's understanding of the law is that the jail is not required to provide legal materials to inmates who are represented by counsel. (Resp. SMF ¶¶ 3, 19.) There is no dispute that Captain Daniels believes that Bounds v. Smith, 430 U.S. 817 (1977) stands for the proposition that if an inmate has an attorney the jail does not have to supply the inmate with legal materials for references. (SMF ¶ 5; Resp. SMF ¶ 5.) According to Dardeno, when he asked for Bounds in writing he was told, "This is a county jail and we do not have to have federal case law here." (SMF ¶ 6.) He relays that the jail told him that they gave him an attorney and they do not have to do anything else to help him. (SMF ¶ 14.)[1] He points out that it was not the jail, but the state court, that gave him the attorney. (SMF ¶ 15.)

Dardeno contends that he asked Pepin for a written statement of the policy and Pepin refused this request, explaining that if Dardeno wanted this statement then he could subpoena

---

[1] The defendants complain that Dardeno has not identified the alleged speaker of these statements so it is not possible to verify it. (Resp. SMF ¶¶ 6, 14.) They also contend that it is inadmissible hearsay. (Resp. SMF ¶¶ 6, 14.)

3

him because then Pepin would get a paid day away from the jail and he would be happy to give the statement under oath. (SMF ¶ 18.) Dardeno further asserts that he has asked Pepin for a copy of all his request forms from about October 1, 2006, through July 2007 and Pepin has denied that request verbally and will not give Dardeno anything in writing. (SMF ¶ 20.) The defendants deny this assertion, indicating that Pepin provided Dardeno with a written response explaining the basis for the denial. (Resp. SMF ¶¶ 18, 20; Pepin Aff. ¶ 11.) From October 3, 2006, to November 26, 2006, the jail, through Pepin, denied four requests for legal materials from Dardeno. (SAMF ¶ 6.) Pepin did so based on his understanding that the law did not require the jail to provide legal materials to inmates who are represented by attorney and it was Pepin's understanding that Dardeno was represented by counsel. (SAMF ¶¶ 7,8.) In October of 2006, Pepin told Dardeno in writing that he needed to obtain his legal materials from his attorney based upon the United States Supreme Court's decision in Bounds. (SAMF 12; Pepin Aff. ¶ 11.) Pepin believes Dardeno has received written responses from the jail to his written requests for legal materials. (SAMF ¶ 13; Pepin Aff. ¶ 12.)

According to Dardeno, under the Maine State Department of Corrections' policies it is mandatory that counties have and provide legal reference materials at the facility for inmate use. (SMF ¶ 4.) Nowhere in this policy does it state that only inmates without counsel should be provided access to legal materials. (SMF ¶ 16.)[2]

With respect to the policy, Dardeno has attached copies of three correctional documents. He attaches pages 45 and 46 from what he describes as the, "Detention and Correctional Standards for Maine Counties and Municipalities Inspection Division MDOC." The relevant portions provide:

---

[2] The defendants respond by contending that these assertions constitute legal conclusions and that Dardeno's reference to the policy is to an unauthenticated document. They also argue that the statement is inadmissible hearsay. (Resp. SMF ¶¶ 4, 16)

4

> <u>N.5.</u>
> A library should be maintained at each facility which consists of
> a.    fiction;
> b.    nonfiction;
> c.    educational materials.
> <u>N.6.</u>
> Library services should be made available to inmates at least twice weekly.
> <u>N.7. Mandatory</u>
> In cases where a facility provides legal reference materials through a law library outside the facility, the facility shall have the latest editions of the following minimum legal reference materials available at the facility for inmate use:
> a.    MRSA Titles 15, 17-A, 29, 30-A, and 34-A;
> b.    U.S. and State Constitution
> c.    Black's Law Dictionary;
> d.    Maine Rules of Court;
> e.    Federal Rules of the Court;
> f.    La Fave & Scott, Criminal Law;
> g.    Cohen Legal Research;
> h.    Palmer's Constitutional Rights of Inmates;
> i.    Detention & Correctional Standards for Counties & Municipalities;
> j.    Prisoner Self-Help Litigation Manual, Manville.
> In cases where a facility maintains a law library, that library shall contain legal materials sufficient to meet constitutional requirements.

(Docket No. 11-4.)

Dardeno also attaches page 18 from the "Inmate Rules and Regulations" which he indicates is from the YCJ inmate handbook. The relevant portion of this attachment reads:

> **Law Library** – Law Library Request Forms may be obtained from the Housing Officer. This form has a list of legal materials and books that are in this facility. Any other type of legal materials, that are not listed, can be obtained by filling out the Law Library Request Form. You must write the proper name of the law materials that you are requesting.
>     You may place the Law Library Request Form in the Administration Box located in every Housing Unit.
>     A Programs Officer will supply you with the law books or materials that you have requested within seven (7) days of the received date.
>     You will have five (5) days to review the materials and return them to the issuing Programs Officer. If you are released or transported to another jail, you will give the law materials to the Housing Unit Officer.
>     You will be responsible for replacing any damaged or lost materials while they are in your possession.

(Docket No. 11-3 at 1.)

Dardeno also attaches a blank copy of the YCJ Inmate Law Library request form. This form advises:

> Listed below are the available Law Library Books at the York County Jail. Most of what is listed is also available on CD Rom. If you wish to obtain any of these books, please indicate below the number that is beside the book you are requesting. If you are not sure of which book you need then indicate the charge or the offense you are trying to research. The Law Library Officer may be able to obtain the specific information you need from the CD Rom.

(Docket No. 11-2.) The form then lists eleven sources, ten of which are listed in the Department of Correction policy set forth above, and the eleventh of which is the Maine Rules of Court, Federal Edition. (Id.)

In a supplemental pleading Dardeno has also asked the court to consider the Department of Correction's "Legal Rights of Prisoners" policy. (Docket No. 16-2.)[3] This policy, implemented under the authority of 34-A M.R.S.A. § 1403, directs correction staff at all adult facilities to "ensure that the legal rights of prisoners are protected." (Id. at 1.) It cautions: "Prisoners have legal rights, which include, but are not limited to, reasonable access to …Legal Materials" (Id. at 1-3.)

Dardeno contends that it makes no sense for the State to mandate jails to have the legal resources and then to have the jail refuse to allow the inmates to have access. (SMF ¶ 13.) Dardeno notes that he is not from this state and that he has never been denied access to legal materials in other states vis-à-vis criminal cases. (SMF ¶ 8.)[4]

Dardeno believes that the jail is trying to arrange things so that an inmate's attorney has to supply the inmate with any and all legal materials, a supply that is not forthcoming from the attorney. (SMF ¶ 9.) He explains that he wants to understand and be prepared for his case and

---

[3] As indicated in the opening paragraph, I grant this motion to supplement.
[4] The defendants retort that this is a conclusion (Resp. SMF ¶ 8), but I reject that description while acknowledging that the statement lacks specificity.

6

asks how can he be prepared for something if he cannot read about it and learn how the system and the law works in view of formulating the right questions and making the right decisions. (SMF ¶¶ 10, 11, 13.) He also wants the access so that he can assess whether or not the state appointed attorney is trying to cut a quick deal and settle his case out of self-interest. (SMF ¶ 11.) He asserts that he fired his first attorney for taking this rush-to-settlement approach. (Id.)

There is no dispute that Dardeno has been appointed counsel. (Resp. SMF ¶¶ 14, 15; SAMF ¶ 2; Dardeno Aff. ¶ 11.) He has been represented in his pending criminal matter since September 27, 2006, first by Tom Elias, Esq., and subsequently by Paul Letourneau, Esq., who is currently representing him in his criminal case. (SAMF ¶¶ 3,4.) Those attorneys have filed numerous motions on Dardeno's behalf as part of his defense of the criminal case. (SAMF ¶ 5.)

According to the defendants, since November 26, 2006, the jail, through Pepin, has provided Dardeno with legal materials in the jail's library that he has requested (SAMF ¶ 9; Pepin Aff. ¶¶ 7-8) and has not denied any requests from Dardeno for legal materials in the Jail's library (SAMF ¶ 10; Pepin Aff. ¶ 9). The jail has not received any requests from Dardeno for legal materials in the jail's library since June 18, 2007. ( SAMF ¶ 11; Pepin Aff. ¶ 10).

In his response to the defendants' objection/cross-motion, Dardeno indicates the following. With respect to his request for law books, the YCJ still will not allow him materials for his criminal case; he has requested the materials and received no response and these request forms are 'missing.' (Reply ¶ 1.) He states that two weeks after he filed his last pleading with the court he received a partial answer to his request for photocopies of his request forms indicated in his summary judgment affidavit, proving, in his mind, that some of his claims were true. (Id. ¶ 2.) The jail will give him law material as long as it has nothing to do with criminal cases and the only reason he is getting any materials is because he filed this complaint. (Id. ¶ 3.)

7

With respect to this civil action, Dardeno maintains that the jail will still not give him books that help him file the proper court papers with this court. (Id.) Dardeno explains that what he is really asking the court to do is to set up a hearing as soon as possible so he can articulate his case. (Id. ¶ 4.) He opines:

> I feel that the court might look at the bigger picture here and say why is the jail wasting thousands of tax payer dollars to fight this inmate in court over reading law book[s] that should be a[llowed] to him (by D.O.C. policy anyways) because that's all I truly want [--] free access to read and understand Maine's laws that are holding me here.
> Being realistic, what attorney is going to dig up and find all the legal stuff a client might ask for to read and understand when he is only being paid a flat fee for a client especially when he may have 75 or more people he's helping (defending). It's even unrealistic to try and ask that of an attorney but that's what the jail is saying I must do instead of reading the book[s] that are on hand per order of the D.O.C.

(Id. ¶ 4.)

*Access to Courts*

Bounds v. Smith held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). From the record above it is clear to me that Dardeno is not asserting that he has not been receiving "adequate assistance from persons trained in the law." I conclude that the cases discussing this constitutional requirement, see, e.g., Christopher v. Harbury, 536 U.S. 403 (2002); Lewis v. Casey, 518 U.S. 343 (1996)[5]; White v.

---

[5] In Casey the Court explicated Bounds:
> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

8

Kautzky, __ F.3d __, __, 2007 WL 2033335, 2 -3 (8th Cir. July 17, 2007); Entzi v. Redmann, 485 F.3d 998, 1004 - 05 (8th Cir. 2007); Bourdon v. Loughren, 386 F.3d 88, 96 -98 (2d Cir. 2004)[6]; United States v. Cooper, 375 F.3d 1041, 1051 -52 (10th Cir. 2004); DeMallory v. Cullen, 855 F.2d 442, 446 -49 (7th Cir. 1988);  Maillett v. Phinney, 755 F. Supp. 463 (D. Me. 1991), are really inapposite to Dardeno's claim.

As joined in the context of these summary judgment motions,[7] Dardeno is asserting that, even though he has assistance of counsel with whom he is satisfied, he wishes to have access to the legal material specified in the Department of Correction's policy, so that he can be better informed about his legal situation and contribute to his defense.  The defendants have briefed their objection and cross-motion solely on the theory that the claim Dardeno raised in his state

---

518 U.S. at 351.

[6] In a concurrence, Senior Circuit Judge Oakes cautioned:
> I write separately to voice my disagreement with the breadth of the rule announced in the majority's decision and applied to the particular circumstances of this case. While I agree that "the provision of counsel can be a means of accessing the courts," as we recognized in Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir.2001), I cannot agree that it is a means of "fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts." Decision at page 11 of majority opinion (emphasis added). There may be other aspects of the right of access that a state may not constitutionally obstruct despite the provision of counsel. Indeed, in Benjamin v. Fraser, when considering impediments to pre-trial detainees' ability to visit with counsel, we recognized that a state could not "'unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts.'" Benjamin. 264 F.3d at 187, 188 (emphasis added) (quoting Procunier v. Martinez, 416 U.S. 396, 419 (1974) and determining that "both the due process right of access to the courts and the Sixth Amendment right to counsel are implicated," and that there was no error in measures ordered to remedy undue delays associated with attorney visits). See also Lane v. Brown, 372 U.S. 477, 480-81 (1963) (holding that the state could not deny an indigent criminal appellant a transcript to appeal pro se from the denial of a writ of error coram nobis, or permit that the appellant, "at the will of the Public Defender, be entirely cut off from any appeal at all").
>
> Nor can I agree with the majority's holding that a state's affirmative obligation to provide access to the courts can be measured without reference to the Sixth Amendment's guarantee of effective assistance of counsel, or that the mere fact of appointed counsel affords meaningful and constitutionally acceptable access to the courts. A defendant whose counsel fails to meet the minimum constitutional standards of effectiveness is not represented at all, and to deny that defendant all other means of communicating with the court most certainly is a deprivation of constitutional proportions, implicating not only the constitutional right of access, but also the Sixth Amendment right to a defense. "[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir.1978) (cited in Benjamin, 264 F.3d at 185).

Id. at 99-100 (Oakes, Senior Cir. J., concurring).

[7] As discussed below, this theory was not clear from the state court record upon removal.

9

court pleadings is one of denial of access to court. (See Defs.' Mem. at 3-6.) It could be argued that the fact that the defendants framed the claim in this fashion does not entitle them to summary judgment in this case even though Dardeno does not overtly dispute this legal characterization. This is because, as discussed below, a fair reading of Dardeno's state court filings and the factual assertions in his summary judgment filings is that he wants the defendants to honor the policy of the Department of Corrections which directs that he have access to certain legal materials (without specifying that this access is only for inmates not represented by counsel). However, to move this matter forward, it is my recommendation that the court grant the defendants' motion for summary judgment as to any denial of access to court claim and allow whatever remains of the complaint to go forward, either in this court or upon remand to state court.

***Order Requiring Dardeno to Inform the Court How He Wishes to Proceed with His Action***

To be fair to the defendants, fairly ascertaining the nature of Dardeno's cause of action requires some forensic effort. The operative 'complaint' filed by Dardeno in the state court provided in full:

> Motion to be Heard
> I Nicholas Dardeno wish to be heard on the following allegations of the violation of my civil liberties.
> Refusing my rights to proper legal research: I have filed all the proper form[s] and spoke[n] with the Jail but have received no response as my case comes closer. I feel that I would be better informed and prepared to help in my defense if more legal research were available which the Jail refuses to give me. I will prepare a summary and discovery in this case.

(Docket No. 1-2 at 1.) In a contemporaneous letter to the state court clerk Dardeno explained that he was trying to comply with the clerk's directions concerning filing appropriate forms and laments: "As you know I need to [be] able to get the Jail and Employees to allow me access to legal book[s] so I can better my criminal case as well as file appropriate paper work in this new

10

civil case! I need to [be] see[n]/heard ASAP as my case is coming up far too soon." (Id. at 2.) In the form summary sheet Dardeno does not check one of the boxes to elect the "most definitive nature of action" (Id. at 3.)

In their answer to these state-court filings defendants deny any violation of Dardeno's "civil liberties." (Docket No. 3 at 1.) They also asserted twenty-seven affirmative defenses. (Id. at 1-4.) These include the assertions that the defendants acted in good faith and did not knowingly violate "any clearly established constitutional or statutory rights of the Plaintiff." (Id. ¶¶ 1, 2, 3.) The defendants' affirmative defenses covered both state tort law claims and doctrines and 42 U.S.C. § 1983 actions. (Id. ¶¶ 4-14.) They also asserted that Dardeno has adequate state law remedies and that no 42 U.S.C. § 1983 claim could therefore be maintained. (Id. ¶ 17.)[8]

In a letter to the state court Dardeno explains: "What I'm looking for is 100% access for all inmates to [the] legal library on [a] regular basis plus damages of $100 a day for violating my rights for not allowing me access to [the] library and hurting my case. I need immediate access to the library." (Docket No. 1-10 at 1.) However, in response to my earlier Order to Show Cause, Dardeno has apparently disavowed any claim to monetary damages in this court and is only seeking injunctive relief. (Docket No. 8).

Also docketed by the state court are copies of a letter that Dardeno sent to Lieutenant Vitello asking for legal materials with a notation to the court that in response he was quoted a Supreme Court case (presumably Bounds) but the jail would not give him a copy of the case and was also told that the jail was not required to have federal books. (Docket No. 1-12 at 1.) And in the state court record there is a copy of a letter Dardeno claims he sent to the Department of

---

[8] These defenses seem to be a kitchen-sink approach to the pro se complaint. For example, the twenty-fourth affirmative defense is: " To the extent the Plaintiff's alleged injuries result from conditions that pre-existed the events alleged in the Complaint, the Defendants cannot be held liable for the alleged damages associated with those alleged injuries." (Id. ¶ 24.)

11

Corrections that summarizes his efforts to get the jail to allow him access to the law library so he can prepare his case. (Docket No. 1-13 at 1.) Furthermore, there are two letters to the court concerning his failed efforts to make service on the defendants with allegations that the Sherriff's Office was purposefully thwarting his efforts to do so (Docket Nos. 1-15 at 1 & 1-17 at 1) and a letter to Lieutenant Vitello complaining of the same (Docket No. 1-18).

      On this record the defendants removed the action to this court. If the "motion for a hearing" had originally been filed in this court I would have likely screened the filing and informed Dardeno that, prior to service on the defendants, he needed to file a complaint that coherently pled a federal cause of action under the federal and local rules of civil procedure. I do not fault the defendants for identifying the possibility of a denial of access to court claim in Dardeno's state-court filings. However, it is also very possible that Dardeno filed his action in the state court in the hopes of pursuing an exclusively state-court remedy of having the defendants comply with the Department of Corrections' policies. And, if Dardeno intended to plead an action under the United States Constitution his state court pleadings (as explicated by the summary judgment record) also suggest a claim for violation of his First and Fourteenth Amendment rights as a pretrial detainee to library materials. See Bell v. Wolfish, 441 U.S. 520, 548-52 (1979); see also, e.g., Kunze v. Bertsch, 477 F.Supp.2d 1038, 1050 - 52 (D.N.D. 2007); Daker v. Ferrero, 475 F.Supp.2d 1325, 1351 - 56 (N.D. Ga. 2007); George v. Smith, 467 F.Supp.2d 906, 918-22 (W.D. Wis. 2006). It seems that the defendants have overlooked this possibility as there is no summary judgment record pertaining to the reason the jail/Officer Pepin would categorically deny Dardeno the requested materials simply because he has an appointed lawyer in the criminal case, especially in view of the Department of Corrections policy and the

jail's own handbook and request forms. Bounds certainly does not mandate this refusal or condone it apropos the rights of pretrial detainees.

Given this ambiguity, I am ordering Dardeno to inform the court of how he would like to proceed in this matter, keeping the discussion above in mind. If Dardeno conceives of his initial 'complaint' as seeking redress under state laws only, then he can ask that this court remand this proceeding to the state court who would then be in a position to convene a hearing on the matter. If Dardeno intended to plead a claim that his federal constitutional rights are being violated by the action of the defendants then there is a federal question and the removal was appropriate. As indicated in my discussion of the summary judgment record above, Dardeno's facts do not support a denial of access to court claim.[9] If he wishes to proceed on a federal constitutional theory he does not need to amend his complaint; the onus would be on the defendants to file an appropriate dispositive motion demonstrating their entitlement to judgment as a matter of law under the Bell v. Wolfish standard.[10]

In addition, Dardeno indicated in his original motion to be heard that he was suing York County employees. The docket reflects that service has not been accomplished on individual employees. Dardeno has not indicated by name which particular employees he has a cause of action against and anticipates serving. In his motion for summary judgment he names the York County Jail as his only defendant. The case will be dismissed against York County employees unless Dardeno response to this order provides a basis for pursuing service against specific employees.

---

[9] I recognize that Dardeno's pleadings do include references to the impact of the defendants' contact in this civil action. However, since this action has been removed to this court he has demonstrated his ability to adequately press his cause of action. See Casey, 518 U.S. at 351.

[10] In this event, upon receipt of Dardeno's pleading, I will set a new deadline for dispositive motions. The facts of the above recited summary judgment record would be the jumping-off point for such a motion and the defendants would have the opportunity to add whatever factual statements and legal argument warranted to prove their entitlement to judgment vis-à-vis a constitutional claim grounded in the First and Fourteenth Amendments.

Dardeno has until **September 14, 2007,** to comply with this order or I will issue a decision recommending that the case will be dismissed.

### *Conclusion*

For the reasons set forth above, I recommend that the Court grant the defendants judgment on any claim that Dardeno's constitutional right to access to court has been denied. I grant Dardeno's motion to supplement his motion for summary judgment and I recommend that the Court deny Dardeno's motion for summary judgment as he has not demonstrated his entitlement to judgment as a matter of law under any of the theories of recovery discussed above. I further order that Dardeno inform the Court by September 14, 2007, whether he seeks a remand of this action to the state court or wishes to proceed in this court on a First Amendment theory. In this response Dardeno must also address the fact that no York County employees have been named or served.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C.  636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 29, 2007                          /s/ Margaret J. Kravchuk
                                         U.S. Magistrate Judge